# State of New York Court of Appeals

OPINION

This opinion is uncorrected and subject to revision before publication in the New York Reports.

No. 59
Andrew Nitkewicz, &c.,
        Appellant,
    v.
Lincoln Life & Annuity Company of
New York,
        Respondent.

Seth Ard, for appellant.
John LaSalle, for respondent.
American Council of Life Insurers, amicus curiae.

SINGAS, J.:

The United States Court of Appeals for the Second Circuit has asked us to determine whether Insurance Law § 3203 (a) (2), which requires insurers to refund a portion of a life insurance premium "if the death of the insured occurs during a period for which the

- 1 -

premium has been paid," applies to "planned payment[s] into an interest-bearing policy account, as part of a universal life insurance policy" (49 F4th 721, 730 [2d Cir 2022]). Because the plain language of section 3203 (a) (2) does not apply to such discretionary payments, we answer the certified question in the negative.

I.

Universal life insurance is distinct from term and whole life insurance. To maintain coverage under a term or whole life policy, the policyholder must pay fixed, periodic premiums. A universal life insurance policy does not have a fixed premium—instead, the policyholder can make a payment in any amount, at any time, subject to certain conditions specified in the policy. These payments are deposited in a "cash value account," also known as a "policy account," an interest-earning account administered by the insurer. The insurer deducts from the policy account the cost of insurance (COI), which varies from month to month based on variables including the insurer's total exposure, any administrative fees, and other required payments from the policy account. The remaining funds in the policy account can grow tax-free over time based on an interest rate set by the insurer and can fund future deductions. Universal life insurance policyholders can typically add funds to the policy account at any time and in any amount. Policyholders often choose—but are not required—to pay a "planned premium," which is a periodic payment often designed, but not guaranteed, to keep the policy in force. A failure to pay a planned premium does not result in termination or lapse of the policy so long as the funds in the policy account are sufficient to cover the deductions. Depending on the terms of the

specific policy, the policyholder may also be able to withdraw funds or take loans against the policy value as long as sufficient funds remain to cover the deductions.

## II.

The Joan C. Lupe Family Trust (Trust) entered into a contract (Policy) under which defendant Lincoln Life and Annuity Company of New York agreed to provide universal life insurance coverage with Joan C. Lupe as the insured. The Policy offered a choice between a level and an increasing death benefit. With a level death benefit (Option I), defendant would pay a specified amount to the Trust upon Lupe's death (minus any debt), and defendant would retain any remaining "Policy Value." The Policy's COI was calculated, in part, based on the net risk, computed by subtracting the Policy Value—less certain administrative charges—from the death benefit. Thus, under Option I, payments into the policy account could reduce the net risk and result in a lower monthly COI. Under Option II, defendant would also be required pay out the remaining policy value upon Lupe's death. Under that option, a higher Policy Value therefore would not result in a lower COI, because it would result in an equivalent increase in the death benefit. The Trust chose Option I, the level death benefit, with a specified payout amount of $1.5 million.[1]

The Policy listed a "Planned Premium" of $53,877.72 annually but explained that the Trust could "pay premiums by any method agreeable with [defendant], at any time prior to [Lupe's] Attained Age 121 and in any amount" subject to certain minor limitations. It

---

[1] The Policy permitted the Trust to switch the death benefit option "[a]ny time after the first policy year and prior to [Lupe]'s Attained Age 121."

also defined "Planned Premium" as "the amount of premium [that the Trust] intend[ed] to pay" and "premium frequency" as "how often [the Trust] intend[ed] to pay the Planned Premium," but specified that "Payment of the Planned Premium [was the Trust's] option." The Policy further explained that the Planned Premium "may need to be increased to keep [the Policy] and the coverage in force; payment of the [P]lanned [P]remium may not prevent [the Policy] from terminating." Defendant agreed to send "Planned Premium payment reminder notices," and permitted changes to Planned Premium frequency or amount by written notification.

When the Trust made a Planned Premium payment, which it did annually for the life of the Policy, the payment was credited to the Policy Value,[2] where the funds earned interest and increased the "Cash Surrender Value."[3] On the first day of each month, defendant made a deduction from the Policy Value comprising the COI, the cost of other benefits, and administrative charges, which guaranteed insurance coverage for that month. If there was not sufficient Cash Surrender Value to cover the monthly deduction, the Policy provided that it would enter a grace period, and eventually lapse if no payment was made. The Trust purchased a "Coverage Protection Guarantee Rider" (CPGR) for additional protections in the event the Cash Surrender Value was insufficient to cover the monthly deduction.

---

[2] Per the Policy's terms, 85% of any payment was to be deposited in the Policy Value, while defendant retained the remaining 15%.

[3] The Cash Surrender Value is the Policy Value less surrender charges and any debt on the Policy.

The Trust paid its last annual Planned Premium on May 7, 2018. On October 6, 2018, Lupe died. Defendant paid out the $1.5 million death benefit but declined to refund any portion of the Planned Premium from earlier that year. Plaintiff Andrew Nitkewicz, as trustee of the Trust, subsequently filed this putative class action suit against defendant for breach of contract, alleging that its refusal to refund a prorated portion of the final year's Planned Premium violated Insurance Law § 3203 (a) (2). Defendant moved to dismiss the complaint for failure to state a claim (*see* Fed Rules Civ Pro rule 12 [b] [6]). The United States District Court for the Southern District of New York granted defendant's motion to dismiss, concluding that section 3203 (a) (2) did not require such a refund because the Planned Premium was not a "premium *actually paid*," nor was the Planned Premium a premium "*for any period* beyond the end of the policy month in which [Lupe's] death occurred" (*see* 2021 WL 2784551, *6-9, 2021 US Dist LEXIS 124389, *17-27 [SD NY, July 2, 2021, 20 Civ. 6805 (JPC)] [emphasis added]). Plaintiff appealed.

Concluding that no New York state cases resolved the issue, the Second Circuit certified the following question to this Court: "Whether a planned payment into an interest-bearing policy account, as part of a universal life insurance policy, constitutes a 'premium actually paid for any period' under the refund provision of [Insurance Law § 3203 (a) (2)]" (49 F4th at 730). We accepted the certified question (39 NY3d 927 [2022]).

III.

Our analysis begins with the statute's plain text—"the clearest indicator of legislative intent" (*Lubonty v U.S. Bank N.A.*, 34 NY3d 250, 255 [2019], quoting (*Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]; *see People ex rel.*

*Negron v Supt., Woodbourne Correctional Facility,* 36 NY3d 32, 43 [2020] ["Where the language of a statute is clear and unambiguous, courts must give effect to its plain meaning" (internal quotation marks and brackets omitted)]).

Insurance Law § 3203 (a) requires that "all life insurance policies, except as otherwise stated herein . . . contain in substance [certain] provisions, or provisions which the superintendent deems to be more favorable to policyholders." Subdivision (a) (2) contains one such provision which states, in relevant part:

> "if the death of the insured occurs during a period for which the premium has been paid, the insurer shall add to the policy proceeds a refund of any premium *actually paid for any period beyond the end of the policy month* in which such death occurred, provided such premium was not waived under any policy provision for waiver of premiums benefit. This paragraph shall not apply to single premium or paid-up policies" (Insurance Law § 3203 [a] [2] [emphasis added]).

Other than the District Court opinion in this case, there are no state or federal cases interpreting section 3203 (a) (2).

The first relevant portion of the statute states that the refund rule only applies to "premium[s] actually paid" (*id.*). A premium is "[t]he amount paid at designated intervals for insurance; esp., the periodic payment required to keep an insurance policy in effect" (Black's Law Dictionary [11th ed 2019], premium) or the "the consideration paid for a contract of insurance" (Merriam-Webster.com Dictionary, premium [https://www.merriam-webster.com/dictionary/premium?utm_campaign=sd&utm_medium=serp&utm_source=jsonld]). In this case, plaintiff paid the Planned Premiums "at designated intervals"—a "periodic payment" of once a year, as selected by the Trust. But these payments were not

"for insurance." Pursuant to the terms of the Policy, a Planned Premium was simply an amount that the Trust had elected to add to the Policy Value at a frequency of its choosing—it was defendant's monthly deductions that actually "paid" for the insurance because those deductions kept the policy in force for another month. Illustrating this point, a year's worth of deductions could have been more or less than an annual Planned Premium depending on (1) how much the Trust chose to pay, and (2) the total COI for that period. Because of this, the Policy made clear that payment of the Planned Premium was entirely the Trust's choice and was not required "to keep [the] insurance policy in effect." It correspondingly explained that such payments would not necessarily keep the Policy from terminating and might "need to be increased to keep [the Policy] and the coverage in force." For similar reasons, a Planned Premium is not the "consideration" paid for the insurance contract. Thus, the plain meaning of "premium" as used in section 3203 (a) (2) does not include planned payments into a policy account at the policyholder's discretion, like the Planned Premiums in this case, irrespective of whether the contracting parties used the word "premium" to describe those payments.

Relatedly, a Planned Premium under the Policy was not paid "for any period beyond the end of the policy month in which" Lupe's death occurred. Though under the terms of subdivision (a) (2), the payment need not have been paid for any *specific* period, under the terms of the Policy, the amount of any given Planned Premium may or may not have been used to cover the monthly deductions. Pursuant to the clear terms of the Policy, the Policy Value remaining after each monthly deduction might have gone to fund future monthly deductions or might have remained in the Policy Value, accruing interest, and ultimately,

would be retained by defendant pursuant to the parties' explicit agreement, given the Trust's selection of the Option I death benefit. Moreover, because the Trust's payments went into a pool (the Policy Value), it is impossible to parse which part, if any, of a given Planned Premium was used to cover the monthly deductions.[4]

Our conclusion also recognizes that plaintiff received certain benefits for choosing to remit Planned Premiums that allowed the Policy Value to grow. First, the Policy Value collected tax-free interest, which could be used to fund future monthly deductions. Additionally, any accumulated Policy Value lowered the monthly deductions because it decreased the monthly COI by reducing defendant's exposure. If the Trust had not wished to avail itself of these benefits, it could have remitted payments that hewed more closely to the actual monthly deductions during any given period. The Trust would have earned less interest and had a higher monthly COI, but defendant would not have retained as much Policy Value when Lupe died. Alternatively, the insurer offered an option under which the Trust could have selected an increasing death benefit. Although the monthly deductions would have been higher under this option, the Trust would have kept the entire Policy Value, including the disputed portion of the final Planned Premium payment. This is simply the nature of the bargain that the parties struck, and a Planned Premium cannot be

---

[4] Plaintiff's argument that its receipt of annual Planned Premium reminders means that each Planned Premium payment constitutes a premium is divorced from the Policy's terms. These reminders were sent purely based on the Trust's own selection of the amount and frequency of the Planned Premium.

said to be "paid for any period beyond the end of the policy month in which [Lupe's] death occurred."

Finally, plaintiff argues that the Court should find significance in the legislature's specific exclusion of "single premium"[5] and "paid-up policies"[6] from this rule, but not universal life insurance. Plaintiff contends that a conclusion that planned premiums are not subject to the refund requirement of Insurance Law § 3203 (a) (2) would effectively rewrite the statute to exclude policies that the legislature did not intend to exclude. We disagree. While planned premiums may not fall within the scope of section 3203 (a) (2)'s refund requirement, that does not mean the statute is wholly inapplicable to universal life insurance policies. If, for example, an insurer deducted the cost of insurance on a quarterly or annual basis, a pro-rata refund of such deductions would be required after the insured's death pursuant to section 3203 (a) (2). Alternatively, if an insurer did not receive timely notice of the insured's death and continued deducting the monthly cost of insurance from a policy account, a refund of any deductions beyond the month of death would be compelled by the statute. In any event, plaintiff's argument begs the question of whether the plain language of section 3203 (a) (2) would apply to planned premiums in the first place. Because it does not, there was no reason for the legislature to add a specific exclusion for such payments. By contrast, the types of policies exempted in the statute

---

[5] A single premium policy provides insurance for a certain period with only one initial premium payment.

[6] A paid-up policy provides insurance for a certain period with premium payments that fund the entire policy before that period is over.

would trigger its plain language because they both involve the payment of premiums for coverage far into the future, thus rendering a specific exclusion necessary to exempt those policies from the refund provision.

Finally, plaintiff's proposed interpretation is simply unworkable and internally inconsistent. Plaintiff has focused on the final Planned Premium and argued that a pro rata portion of that final payment should be refunded. But, as previously discussed, it was solely the Trust's decision when to make payments and in what amount, and the Planned Premium is untethered to how much is deducted annually to pay for the COI and administrative fees. Further, since an insured is not required to pay an *entire* planned premium in or for any given period—or could pay *in excess* of the planned premium— plaintiff's proposed interpretation would raise questions that the language of 3203 (a) (2) simply does not answer regarding how to allocate such payments to any "period" for purposes of the insurer's refund obligation. Ultimately, plaintiff's reading of the statute is both inconsistent with its plain language and lacks any connection to how universal life insurance works in practice.[7]

In sum, Insurance Law § 3203 (a) (2) does not apply to discretionary payments like those at issue here. Accordingly, the certified question should be answered in the negative.

---

[7] The impact, if any, of the CPGR on this analysis is not before the Court on this certified question (*see* 49 F4th at 727 n 4, 730).

Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.27 of this Court's Rules of Practice, and after hearing argument by counsel for the parties and consideration of the briefs and record submitted, certified question answered in the negative. Opinion by Judge Singas. Chief Judge Wilson and Judges Rivera, Garcia, Cannataro, Troutman and Halligan concur.

Decided October 19, 2023